## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BOYD L. MOTHE, JR., ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-9073** |
| **LOUISIANA STATE BOARD OF EMBALMERS**<br>**AND FUNERAL DIRECTORS, ET AL.,**<br>    **Defendants** | **SECTION: "E"** |

## ORDER AND REASONS

Before the Court is a motion to dismiss, filed by Defendants, Louisiana State Board of Embalmers and Funeral Directors, Kim Michel, S.J. Brasseaux, and Dianne Alexander, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiffs, Boyd L. Mothe, Jr. ("Mothe") and Mothe Funeral Homes, L.L.C. ("MFH"), oppose.[2] For the reasons that follow, the Court **GRANTS** the motion.

## BACKGROUND

Plaintiffs allege that, in October 2018, the Louisiana State Board of Embalmers and Funeral Directors ("the Board") advised them that the yearly embalmer and funeral director license renewal fee for MFH's employee, Alvaro J. Berrios, had not been received.[3] Plaintiffs allege that, on or about October 18, 2018, the Board issued a *subpoena duces tecum* to MFH to produce documents regarding the embalming activities of Berrios.[4] Plaintiffs allege that, on October 30, 2018, the Board issued a subpoena to Mothe compelling his attendance at a hearing on January 8, 2019 before the Board.[5] The subpoena identified two alleged violations Plaintiffs had committed under LA. REV. STAT.

---

[1] R. Doc. 3-1.
[2] R. Doc. 8.
[3] R. Doc. 1 at 7.
[4] *Id.* at 3.
[5] *Id.*

37:848(A) and 37:848(D) by allowing Berrios to perform numerous embalming procedures without a license.[6] Plaintiffs allege the Board mailed a notice of delinquency to Berrios at the wrong address.[7] Plaintiffs allege that, during the hearing on January 8, 2019, the Board voted to dismiss the complaint against Mothe and MFH.[8]

Plaintiffs filed their complaint on April 5, 2019 bringing claims under 42 U.S.C. § 1983 and Louisiana state law.[9] They bring suit against the Board; Brasseaux, in his individual capacity and in his official capacity as President of the Board; Michel, in her individual capacity and in her official capacity as Executive Director of the Board; and Alexander, in her individual capacity and in her official capacity as General Counsel for the Board.[10] Michel and Alexander are employees of the Board, not members of the Board.

On May 16, 2019, Defendants filed this motion to dismiss, arguing Plaintiffs' claims against the Board and the individual Defendants, in their official capacities, are barred by sovereign immunity and Plaintiffs' claims against the individual Defendants, in their individual capacities, are barred by absolute immunity and qualified immunity. Plaintiffs filed a memorandum in opposition to Defendants' motion to dismiss on June 18, 2019.[11]

## LEGAL STANDARD

### I. Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[12] A motion to dismiss under Federal

---

[6] *Id.* at 3–4.
[7] *Id.* at 6, 8.
[8] *Id.* at 12.
[9] *Id.*
[10] *Id.* at 2; R. Doc. 3-1 at 5.
[11] R. Doc. 8.
[12] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).

Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.[13] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[14] "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[15] "When, as here, grounds for dismissal may exist under both Rule 12(b)(1) and Rule 12(b)(6), the Court should, if necessary, dismiss only under the former without reaching the question of failure to state a claim."[16]

## II.    Rule 12(b)(6) Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[17] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[19] The court, however, does not accept as true legal conclusions or mere conclusory statements, and "conclusory allegations or legal conclusions masquerading as factual

---

[13] FED. R. CIV. P. 12(b)(1).

[14] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).

[15] *In re FEMA*, 668 F.3d at 287.

[16] *Valdery v. Louisiana Workforce Comm'n*, No. CIV.A. 15-01547, 2015 WL 5307390, at *1 (E.D. La. Sept. 10, 2015).

[17] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[19] *Id.*

conclusions will not suffice to prevent a motion to dismiss."[20] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[21]

In summary, "[f]actual allegations must be enough to raise a right to relief above the speculative level."[22] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]'—that the pleader is entitled to relief."[23] "Dismissal is appropriate when the complaint on its face show[s] a bar to relief."[24]

## ANALYSIS

I. **Plaintiffs' claims against the Louisiana State Board of Embalmers and Funeral Directors and the individual Defendants, in their official capacities, are barred by sovereign immunity.**

The Eleventh Amendment provides, "The judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State."[25] "The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court," including by its own citizens.[26] The Fifth Circuit has held that, "[a]bsent a waiver or consent by the state or an express negation of immunity by act of Congress, the eleventh amendment prohibits a federal court from awarding either legal or equitable relief against the state."[27] Although Louisiana has

---

[20] *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001) (citing *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)).
[21] *Iqbal*, 556 U.S. at 663, 678 (citations omitted).
[22] *Twombly*, 550 U.S. at 555.
[23] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).
[24] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (citation omitted).
[25] U.S. CONST. amend. XI.
[26] *Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).
[27] *Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 555 (5th Cir. 1988).

waived its Eleventh Amendment sovereign immunity against tort claims brought in state court,[28] it has not waived its sovereign immunity from suits in federal court.[29]

The Fifth Circuit has laid out six factors to be considered in determining whether a state entity or an official of the entity sued in his or her official capacity, is entitled to Eleventh Amendment sovereign immunity:

1. Whether the state statutes and case law view the agency as an arm of the state;
2. The source of the entity's funding;
3. The entity's degree of local autonomy;
4. Whether the entity is concerned primarily with local as opposed to statewide problems;
5. Whether the entity has the authority to sue and be sued in its own name; and
6. Whether the entity has the right to hold and use property.[30]

These factors were first enumerated by the Fifth Circuit in *Clark v. Tarrant County* and are frequently referred to as the *Clark* factors.[31] Not all *Clark* factors are given the same weight, and a defendant is not required to satisfy each factor to benefit from Eleventh Amendment sovereign immunity.[32] The second factor is the most important because "an important goal of the Eleventh Amendment is the protection of state treasuries."[33] Courts "typically deal with the last two factors in a fairly brief fashion."[34] These factors help the courts "balance the equities and determine as a general matter 'whether the suit is in reality a suit against the state itself.'"[35]

---

[28] LA. REV. STAT. § 13:5106.

[29] *See id.; Mathai v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, 959 F. Supp. 2d 951, 957 (E.D. La.), *aff'd*, 551 F. App'x 101 (5th Cir. 2013).

[30] *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999).

[31] *See Clark v. Tarrant County*, 798 F.2d 736, 744–45 (5th Cir. 1986); *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 319 (5th Cir. 2001).

[32] *Hudson*, 174 F.3d at 681–82.

[33] *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147–48 (5th Cir. 1991); *see also id.* at 682.

[34] *Hudson*, 174 F.3d at 682.

[35] *Id.* (quoting *Laje v. R.E. Thomason General Hosp.*, 665 F.2d 724, 727 (5th Cir.1982)).

With respect to first *Clark* factor, whether the state statutes and case law view the agency as an arm of the state, the Fifth Circuit has stated, if "[t]he Department was created by the state legislature, [then] Louisiana courts would view the Department as part of the state."[36] The Fifth Circuit has stated, "[i]n every recent case in which a Louisiana political entity has been held to be an 'arm of the state,' the state agency being sued was part of a department within the executive branch."[37]

In *Earles v. State Board of Certified Public Accountants of Louisiana*, the Fifth Circuit found that Louisiana would consider the Louisiana Board of Certified Public Accountants to be an arm of the state because it is a state agency within the Department of Economic Development, which is a department of the executive branch of Louisiana government.[38] Similarly, in this case, the Board is a state licensing agency within the Louisiana Department of Health,[39] which is a department of the executive branch of Louisiana government.[40] Accordingly, the Court finds that Louisiana would view the Board as an arm of the state.

Turning to the second *Clark* factor, the Court examines the source of the Board's funding "to determine whether a judgment against it will be paid with state funds."[41] The Louisiana Constitution provides, "[n]o judgment against the state, a state agency, or a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor by the legislature or by the political subdivision against which the judgment is

---

[36] *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 186 (5th Cir. 1986).
[37] *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 692 (5th Cir. 2002) (citations omitted).
[38] 139 F.3d 1033, 1037 (5th Cir. 1998). The Fifth Circuit found the State Board of Certified Public Accountants of Louisiana to be entitled to sovereign immunity.
[39] LA. REV. STAT. § 37:832 (creates the Louisiana State Board of Embalmers and Funeral Directors within the Louisiana Department of Health and subjects the Board to the provisions set forth in LA. REV. STAT. § 36:803, which provides the guidelines to be followed by state licensing agencies).
[40] *See* LA. REV. STAT. § 36:4.
[41] *Hudson*, 174 F.3d at 686.

rendered."[42] The Fifth Circuit has held that "judgments against state agencies or departments within the executive branch are treated as liabilities of the state itself."[43] In *Darlak v. Bobear*, the Fifth Circuit found the source of funding for the Louisiana Department of Health and Human Resources ("DHHR") and Charity Hospital of Louisiana at New Orleans ("Charity") to weigh in favor of finding Eleventh Amendment immunity for both DHHR and Charity.[44] The Fifth Circuit reasoned that "[a]s executive departments, DHHR and Charity receive their funding from the State of Louisiana, [and] any judgment against either DHHR or Charity would be paid from state funds appropriated for that purpose."[45]

Although Defendants in this case admit the Board relies primarily on self-generated fees, Defendants allege the Board, as a state agency, is covered by the Office of Risk Management ("ORM"), and any judgment against the Board is statutorily mandated to be paid by state funds.[46] The Court takes judicial notice of the Financial Statement Audit of the Board for the year ending on June 30, 2016, issued by the Louisiana Legislative Auditor.[47] According to the Audit, "[l]osses of the Board arising from judgments, claims, and similar contingencies are paid through the state's self-insurance fund operated by the Office of Risk Management, the agency responsible for the state's risk management program, or by appropriation from the state's General Fund."[48] Similar

---

[42] LA. CONST. art 12, § 10(C).

[43] *Vogt*, 294 F.3d at 693.

[44] 814 F.2d 1055, 1059 (5th Cir. 1987).

[45] *Id.*

[46] R. Doc. 3-1 at 11.

[47] *See* FED. R. EVID. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Tu Nguyen v. Bank of Am., N.A.*, 728 F. App'x 387, 388 (5th Cir. 2018) ("Because the proposed documents are highly indisputable public records, we take judicial notice of them.").

[48] DARYL G. PURPERA, LOUISIANA LEGISLATIVE AUDITOR, LOUISIANA STATE BOARD OF EMBALMERS AND FUNERAL DIRECTORS, LOUISIANA DEPARTMENT OF HEALTH, A COMPONENT UNIT OF THE STATE OF LOUISIANA, FINANCIAL STATEMENT AUDIT FOR THE YEAR ENDED JUNE 30, 2016 32 (2016) ("2016 LSBEFD LEGISLATIVE AUDIT").

to a judgment against the DHHR or Charity, a judgment against the Board would be paid from state funds appropriated for that purpose.[49] The second *Clark* factor leans in favor of finding Eleventh Amendment sovereign immunity.

Turning to the third *Clark* factor, the Court must determine the Board's level of local autonomy.[50] The Fifth Circuit has stated that, when the members of a state agency serve at the governor's pleasure, "the vulnerability of the [defendants] to the governor's pleasure militates against a finding of local autonomy."[51] In *Voisin's Oyster House, Inc. v. Guidry*, the Fifth Circuit found the Louisiana Department of Wildlife and Fisheries ("the Department") and the Louisiana Wildlife and Fisheries Commission ("the Commission") to have little local autonomy because the Department is headed by a secretary who functions under the control and supervision of the governor and serves at the governor's pleasure, and members of the Commission are appointed by the governor and are confirmed by the state senate for one six-year term.[52]

Similar to the Department and Commission in *Voisin's*, the Board in this case is composed of nine members, all of whom are appointed by the Governor, subject to Senate confirmation, and serve at the pleasure of the governor for terms of four years.[53] Eight of the Board members are required to be residents of particular districts comprised of several parishes in each geographical region of the state.[54] The Board is subject to budgetary review by the undersecretary of the Louisiana Department of Health and is required to comply with the Louisiana Licensing Agency Budget Act.[55] Plaintiffs argue the

---

[49] *See id.*
[50] *Hudson*, 174 F.3d at 681.
[51] *Jacintoport Corp. v. Greater Baton Rouge Port Commission*, 762 F.2d 435, 442 (5th Cir. 1985).
[52] 799 F.2d 183, 187 (5th Cir. 1986).
[53] La. Rev. Stat. § 37:832.
[54] *Id.*
[55] La. Rev. Stat. § 36:803.

Board's "rulings on matters of licensing and operations of embalmers, funeral directors and related professions and businesses are not subject to review by any oversight board or other entity."[56] However, decisions by the Board may be contested by seeking judicial review in the district court in which the agency is located.[57] The third *Clark* factor weighs in favor of finding that the Board has little local autonomy.

With respect to the fourth *Clark* factor, the Court must determine whether the Board is concerned primarily with local, as opposed to statewide, problems.[58] The relevant test used by the Fifth Circuit requires the Court to determine "whether the entity acts for the benefit and welfare of the state as a whole or for the special advantage of local inhabitants."[59] In *Earles*, the Fifth Circuit found the fourth *Clark* factor favored sovereign immunity for the State Board of Certified Public Accountants of Louisiana because that board was concerned with regulating the practice of public accounting on a statewide, rather than local, scale.[60] In this case, Defendants allege, and Plaintiffs do not dispute, that "the Board's powers and duties encompass the licensing and regulation of the practice of embalming and funeral directing throughout the entire state of Louisiana."[61] Accordingly, the fourth *Clark* factor favors sovereign immunity for the Board.

In regard to the fifth and sixth *Clark* factors, the Court must determine whether the Board has the authority to sue and be sued in its own name, and whether the Board has the right to hold and use property.[62] LA. REV. STAT. § 37:849 states, "[t]he [B]oard may bring legal proceedings to enjoin a person or establishment violating the provisions

---

[56] R. Doc. 8 at 11.
[57] LA. REV. STAT. § 49:964; *see also* LA. REV. STAT. § 37:846.
[58] *Hudson*, 174 F.3d at 681.
[59] *Pendergrass v. Greater New Orleans Expressway Comm'n*, 144 F.3d 342, 347 (5th Cir. 1998) (citing *Jacintoport*, 762 F.2d at 443).
[60] 139 F.3d at 1038.
[61] R. Doc. 3-1 at 11.
[62] *Hudson*, 174 F.3d at 681.

of this Chapter."[63] The Board's creating and enabling statutes provide that it may be sued in the Parish of Orleans and may "establish its office in the Metropolitan New Orleans area."[64] As indicated in the statutory text, the Board has the authority to sue and be sued in its own name, and has the right to hold and use property. Accordingly, the fifth and sixth *Clark* factors weigh against the Board's entitlement to Eleventh Amendment sovereign immunity. However, the Fifth Circuit has not found the fifth and sixth *Clark* factors to be controlling when the other factors point to a finding of Eleventh Amendment immunity.[65]

In similar situations, the Fifth Circuit has found licensing boards created within the Louisiana Department of Health to be immune from suit based on Eleventh Amendment sovereign immunity. Specifically, the Fifth Circuit has determined the Louisiana State Board of Medical Examiners, the Louisiana State Board of Dentistry, and the Louisiana State Board of Nursing, are state agencies entitled to Eleventh Amendment sovereign immunity.[66]. The Court finds the Board to be an arm of the state of Louisiana entitled to sovereign immunity under the Eleventh Amendment.

Section 1983 authorizes suit against a "*person* who, under color of [law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."[67] "[N]either a State nor its officials acting in their official

---

[63] LA. REV. STAT. § 37:849.
[64] LA. REV. STAT. § 37:833.
[65] *Darlak v. Bobear*, 814 F.2d 1055, 1060 (5th Cir. 1987).
[66] *See Rodgers v. State Bd. of Nursing*, 665 F. App'x 326, 330 (5th Cir. 2016) (confirming the Louisiana State Board of Nursing is entitled to sovereign immunity); *Fairley v. Louisiana*, 254 F. App'x 275, 277 (5th Cir. 2007) (finding the Louisiana State Board of Medical Examiners is entitled to sovereign immunity); *Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 556 (5th Cir. 1988) (finding the Louisiana State Board of Dentistry is entitled to sovereign immunity).
[67] 42 U.S.C. § 1983.

capacities are 'persons' under § 1983."[68] Accordingly, Eleventh Amendment sovereign immunity bars Plaintiffs from bringing suit against the Board and the individual Defendants in their official capacities. The Court dismisses without prejudice Plaintiffs' § 1983 claims against the Board and the individual Defendants in their official capacities.[69]

Plaintiffs' state law claims against the Board and individual Defendants in their official capacities also are barred by Eleventh Amendment sovereign immunity. The Supreme Court has held that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."[70] Moreover, the Fifth Circuit has held that "sovereign immunity [bars] federal courts from hearing state law claims brought in federal court against state entities and state officers sued in their official capacities."[71] The Court dismisses without prejudice Plaintiffs' state law claims against the Board and the individual Defendants in their official capacities.

## II.   Plaintiffs' § 1983 claims against the individual Defendants in their individual capacities are barred by absolute immunity.

In the instant motion, Defendants argue the individual Defendants, sued in their individual capacities, are entitled to absolute immunity from liability on Plaintiffs' § 1983 claim against them.[72] "Absolute immunity denies a person whose federal rights have been

---

[68] *Fairley v. Stalder*, 294 F. App'x 805, 808 (5th Cir. 2008) (unpublished) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)).

[69] *See Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

[70] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

[71] *Kermode v. Univ. of Mississippi Med. Ctr.*, 496 F. App'x 483, 490 (5th Cir. 2012).

[72] Plaintiffs correctly argue that the individual Defendants are not entitled to Eleventh Amendment sovereign immunity on the claims against them in their *individual* capacities. R. Doc. 8 at 14–17. However, Defendants motion to dismiss the individual-capacity claims against them is based solely on absolute and qualified immunity, not sovereign immunity. R. Doc. 3-1 at 13–24.

violated by a government official any type of remedy, regardless of the conduct."[73] The

Fifth Circuit has explained:

> Although the Supreme Court has been rather conservative in
> its grants of absolute immunity, it has recognized that there
> are some officials whose duties require a full exemption from
> liability. Such officials include judges performing judicial acts
> within their jurisdiction, prosecutors in the performance of
> their official functions, and certain "quasi-judicial" agency
> officials who, irrespective of their title, perform functions
> essentially similar to those of judges or prosecutors, in a
> setting similar to that of a court.[74]

The Court notes that Defendant Brasseaux is a member of the Board, Michel is

Executive Director of the Board, and Alexander is general counsel for the Board.[75] In

determining whether a government official is absolutely immune from suit, the Fifth

Circuit has held that "the proper focus should not be the identity of the party claiming the

immunity, but rather his "role in the context of the case."[76] In short, "immunity attaches

to particular official functions, not to particular offices."[77] The Fifth Circuit has found

government officials to be entitled to sovereign immunity when they perform quasi-

judicial or quasi-prosecutorial roles, regardless of whether they are members or

employees of a board or agency.[78]

In *Butz v. Economou*, the Supreme Court set forth a "non-exhaustive list of factors

to determine whether an agency and its members perform quasi-judicial functions,"

which the Fifth Circuit has rephrased as follows:[79]

---

[73] *Kermode*, 496 F. App'x at 490 (internal quotation marks omitted).
[74] *Id.* (citing *Butz v. Economou*, 438 U.S. 478, 511–17 (1978)) (internal citations omitted).
[75] *Id.* at 2; R. Doc. 3-1 at 5.
[76] *Id.* (quoting *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir.1996)).
[77] *Id.*
[78] *See Di Ruzzo v. Tabaracci*, 480 F. App'x 796, 797 (5th Cir. 2012); *Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676, 692–93 (5th Cir. 1985).
[79] *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 634 (5th Cir. 2000) (citing *Butz*, 438 U.S. at 512).

1. the need to assure that the individual can perform his functions without harassment or intimidation;
2. the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;
3. insulation from political influence;
4. the importance of precedent;
5. the adversary nature of the process; and
6. the correctability of error on appeal.[80]

"No one factor is controlling and the list of considerations is not intended to be exclusive."[81] The Fifth Circuit also applies these factors to determine whether officials performed quasi-prosecutorial functions.[82]

Applying the first *Butz* factor, the Court must determine whether the Board requires freedom from the threat of personal harassment or intimidation to perform its functions.[83] In *Beck v. Texas State Board of Dental Examiners*, the Fifth Circuit held that, because members of the Texas State Board of Dental Examiners ("TSBDE") were statutorily empowered to revoke, suspend and deny licenses, they must be able to make such decisions free from the threat of incurring personal liability.[84] In *O'Neal v. Mississippi Board of Nursing*, the Fifth Circuit found the Mississippi Board of Nursing ("the MBN") needed freedom from harassment or intimidation in performing its duties because the MBN is "empowered to make difficult and controversial decisions . . . which may negatively affect an individual's life."[85] Similar to the TSBDE in *Beck*, the Board in this case "may refuse to grant, refuse to renew, suspend, or revoke any license, or impose a sanction or fine on any licensee found guilty of any statutorily prohibited act or

---

[80] *Id.*
[81] *O'Neal*, 113 F.3d at 65.
[82] *See Disraeli v. Rotunda*, 489 F.3d 628, 632 (5th Cir. 2007); *see also Butz*, 438 U.S. at 515 ("We also believe that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts.").
[83] *Beck*, 204 F.3d at 634.
[84] *Id.* at 636.
[85] *O'Neal*, 113 F.3d at 66.

omission."[86] These are difficult and possibly controversial decisions which may negatively affect an individual's life. Accordingly, the Court finds the performance of such functions requires freedom from the threat of personal harassment and intimidation. The first *Butz* factor weighs in favor of absolute immunity.

Applying the second *Butz* factor, the Court must determine whether procedural safeguards, which reduce the need for private damages actions, are in place as a means of controlling unconstitutional conduct.[87] The Fifth Circuit has held that "[b]oard members are entitled to absolute immunity 'from liability for [their] judicial acts even if [their] exercise of authority is flawed by the commission of grave procedural error.'"[88] Accordingly, under the second *Butz* factor, "the inquiry is not whether the defendants committed error while executing the safeguards, but whether adequate safeguards existed."[89] In *Thomas v. City of Dallas*, the Fifth Circuit found the proceedings held by the Urban Rehabilitation Standards Board ("URSB") to have sufficient procedural safeguards because the "City Code provides that property owners have a right: to receive notice of URSB hearings; to present and cross-examine witnesses; to request that a case be reheard; and to appeal an adverse decision to state district court."[90] In *O'Neal*, the Fifth Circuit determined the second *Butz* factor was satisfied because the following procedural safeguards were made available to any person charged by the MBN: "the right to counsel, adequate notice of a hearing, and the opportunity to present and cross-examine witnesses."[91]

---

[86] LA. REV. STAT. § 37:846.
[87] *Beck*, 204 F.3d at 634.
[88] *Id.* at 635 (quoting *Stump v. Sparkman*, 435 U.S. 349, 359 (1978)).
[89] *Id.* at 636.
[90] 175 F.3d at 363 (internal citations omitted).
[91] *O'Neal*, 113 F.3d at 66.

In this case, the procedural safeguards available to any individual facing a petition for revocation or suspension of a license or registration are provided by LA. REV. STAT. § 37:846 as follows:

> [The petition] shall state the charges with reasonable definiteness. Notice of not less than fifteen days will be given licensee and a hearing set. Complainant and licensee may have benefit of counsel, and shall have the right to offer evidence and cross-examine witnesses. Strict rules of evidence need not be complied with, but no evidence shall be received unless given by witnesses present. Upon due hearing, board may enter its findings of record. Appeal from any board decision or order shall be filed in a court of competent jurisdiction within fifteen days from board's decision, otherwise board's findings will be final.

In this case, more procedural safeguards exist than existed in *O'Neal*. Accordingly, the Court finds there are adequate procedural safeguards in place which reduce the need for private damages.

Turning to the third *Butz* factor, the Court must determine whether the Board is insulated from political influence.[92] In *O'Neal*, the Fifth Circuit found that members of the MBN were insulated from political influence because members are appointed by the Governor for staggered terms for four years and no member may serve more than two consecutive terms.[93] In *Thomas*, the Fifth Circuit held the fact the members of the URSB are not elected, but rather appointed by members of the city council, was sufficient to find the URSB is shielded from political influence for purposes of the third *Butz* factor.[94] In this case, the Board members are appointed by the Governor, subject to senate confirmation, for terms of four years and may not serve more than two consecutive terms, without at least one year elapsing between the expiration of a member's second

---

[92] *Beck*, 204 F.3d at 634.
[93] *O'Neal*, 113 F.3d at 66.
[94] *Thomas*, 175 F.3d at 363.

15

consecutive term and his appointment to a subsequent term.[95] Accordingly, the Court finds the Board is insulated from political influence.

Applying the fourth *Butz* factor, the Court must determine the role of precedent in the Board's decisions.[96] It is not uncommon for the parties to be unaware of, or fail to address, the role of precedent in a board's decisions, and the Fifth Circuit has made it clear that this factor is not dispositive, especially when the other five *Butz* factors are satisfied.[97] In the instant motion, Defendants admit "the record is unclear as to how often the Board relies upon its prior precedent in deciding issues."[98] This factor neither weighs in favor of or against a finding of absolute immunity. However, based on Fifth Circuit precedent, the Court finds this factor is not dispositive.

Applying the fifth *Butz* factor, the Court examines whether the Board's proceedings are adversarial in nature.[99] In *Beck*, the Fifth Circuit found the TSBDE's proceedings were adversarial because the dentist had the right to be represented by counsel, the right to present evidence to defend against the charges, and "[t]he hearings were conducted by a presiding officer who administered oaths to witnesses and made evidentiary rulings."[100] In *O'Neal*, the Fifth Circuit found that the MBN's proceedings seemed inherently adversarial because "the parties have a right to counsel, are able to present witnesses, and [are able to] cross-examine adverse witnesses."[101] In this case, when a hearing is set to

---

[95] LA. REV. STAT. § 37:832.
[96] *Beck*, 204 F.3d at 634.
[97] *See id.* at 636 (holding that uncertainty as to whether the board abided by precedent is not dispositive); *O'Neal*, 113 F.3d at 66 (stating, "while the record is unclear as to whether the board was bound by precedent, we nevertheless feel that this one factor is not controlling and is greatly overshadowed by the convincing nature of the five other variables."); *Disraeli*, 489 F.3d at 633 (finding that despite the plaintiff's failure to address whether the Board adhered to precedent, "there is no reason for the court to conclude that the Board would be unlikely to follow its own precedent.").
[98] R. Doc. 3-1 at 17.
[99] *Beck*, 204 F.3d at 634.
[100] *Id.* at 636.
[101] *See O'Neal*, 113 F.3d at 66.

address a petition for the revocation or suspension of a license or registration certificate, "[c]omplainant and licensee may have benefit of counsel, and shall have the right to offer evidence and cross-examine witnesses. Strict rules of evidence need not be complied with, but no evidence shall be received unless given by witnesses present."[102] Because the guidelines in place in this case are similar to or greater than those identified in *Beck* and *O'Neal* that satisfied the fifth *Butz* factor, the Court finds the Board's proceedings to be adversarial in nature.

Applying the sixth *Butz* factor, the Court must determine whether the Board's errors are correctable on appeal.[103] The Fifth Circuit has held that the sixth *Butz* factor is satisfied if a board's errors may be corrected on appeal by the state district court.[104] In this case, LA. REV. STAT. § 37:846(B), in the chapter of the Revised Statutes on the Board, provides that "[a]ppeal from any board decision or order shall be filed in a court of competent jurisdiction within fifteen days from board's decision, otherwise board's findings will be final." Further, LA. REV. STAT. § 49:964(A)(1) provides:

> A person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review [regardless of] whether or not he has applied to the agency for rehearing, without limiting, however, utilization of or the scope of judicial review available under other means of review, redress, relief, or trial de novo provided by law. A preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy and would inflict irreparable injury. . . Proceedings for review may be instituted by filing a petition in the district court of the parish in which the agency is located within thirty days after the transmittal of notice of the final decision by the agency.[105]

---

[102] LA. REV. STAT. § 37:846(B).
[103] *Beck*, 204 F.3d at 634.
[104] *See id.* at 636; *Thomas*, 175 F.3d at 363.
[105] LA. REV. STAT. § 49:964(A)(1). This provision is found in the Louisiana Administrative Procedure Act ("APA"), LA. REV. STAT. §§ 49:950 *et seq.* The APA provides, "When the grant, denial, or renewal of a license is required to be preceded by notice and opportunity for hearing, the provisions of this Chapter concerning

As expressly stated in the statutory text, the Court finds that errors committed by the Board may be corrected on appeal.

In *O'Neal*, the Fifth Circuit held that members of the MBN are absolutely immune from suit based on its finding that "five out of the six [*Butz*] factors [were] sufficiently satisfied, with the one exception being merely questionable."[106] In this case, the Court faces a situation identical to that in *O'Neal* because five out of the six *Butz* factors are satisfied. Although the fourth factor is not satisfied, that factor is not dispositive.[107] Accordingly, Defendants are performing quasi-judicial or quasi-prosecutorial actions when they conduct hearings relating to licensing.

The Court proceeds to analyze whether Defendants' actions which are alleged to have caused damages in this *particular* case are quasi-judicial or quasi-prosecutorial in nature.[108] The Fifth Circuit has held that "if the job enjoys absolute immunity, the inquiry into liability narrows to whether the official was about his work when engaged in the accused conduct. Failure . . . to apply the rules correctly does not leave an official unsheltered from liability—indeed, that is the protection afforded by absolute immunity."[109] Plaintiffs argue Defendants are not entitled to qualified immunity because their actions fell outside the scope of their official duties (1) when Defendants Brasseaux, Michel, and Alexander "unilaterally usurped the [Board's] prosecutorial powers and

---

adjudication shall apply." LA. REV. STAT. § 49:961(A). LA. REV. STAT. § 37:846(B), which governs the Board's hearings related to licensing, requires notice and opportunity for hearing. As a result, the APA's requirements apply to hearings by the Board.

[106] 113 F.3d 62 at 66.

[107] *See O'Neal*, 113 F.3d at 66 (stating, "while the record is unclear as to whether the board was bound by precedent, we nevertheless feel that this one factor is not controlling and is greatly overshadowed by the convincing nature of the five other variables.").

[108] *See Thomas v. City of Dallas*, 175 F.3d 358, 363 (5th Cir. 1999) (analyzing defendants' actions in particular case after *Butz* factors); *Disraeli*, 489 F.3d at 633–34 (same).

[109] *Thomas*, 175 F.3d at 362.

caused a formal hearing to be set" before the Board without a majority vote,[110] despite the provision in LA. REV. STAT. § 37:847 requiring a majority vote of the Board to call for a formal hearing, and (2) when Defendant Michel alleged at the hearing that Plaintiffs acted in violation of the licensing statutes.[111]

With respect to Defendants' initiation of the formal hearing, LA. REV. STAT. § 37:847 provides it is the duty of the Board members to decide whether to hold a formal hearing or dismiss the complaint.[112] In *Butz*, the Supreme Court stated:

> [a]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought.[113]

In this case, Defendants' decision to hold a formal hearing regarding the alleged violations was much like a prosecutor's decision to initiate or move forward with a criminal prosecution. Although Plaintiffs allege Defendants did not comply with the procedural requirement that a formal hearing be held only after a majority vote of the Board, "Board members are entitled to absolute immunity 'from liability for [their] judicial acts even if [their] exercise of authority is flawed by the commission of grave procedural error'" so long as the statute provides sufficient procedural safeguards.[114] The Court finds the individual Defendants, in their individual capacities, are entitled to absolute immunity

---

[110] R. Doc. 8 at 6, 17.
[111] R. Doc. 1 at 11.
[112] *See* LA. REV. STAT. § 37:847 ("The board may, by majority vote, dismiss the complaint or call for a formal hearing.").
[113] 438 U.S. 478 at 515.
[114] *See Beck*, 204 F.3d at 635 (quoting *Stump*, 435 U.S. at 359).

for their role in initiating the formal hearing because they were performing functions that were quasi-prosecutorial in nature, and the statute provides sufficient procedural safeguards. [115]

Plaintiffs also allege Michel "made unsupported allegations that Mothe and/or MFH violated La. R.S. 37:848 by employing Berrios to perform 70 embalming procedures while employed by MFH."[116] Plaintiffs argue Michel is not entitled to absolute immunity with respect to her statements during the formal hearing.[117] The parties do not clarify whether Michel made allegations at the hearing in a quasi-prosecutorial role or as a witness. To the extent Michel's allegations were quasi-prosecutorial, she is entitled to absolute immunity, as discussed above. To the extent her allegations were made as a witness, she also is entitled to absolute immunity, consistent with the Supreme Court's holding in *Cleavinger v. Saxner* that "[w]itnesses are integral parts of the judicial process and, accordingly, are shielded by absolute immunity."[118] As a result, the Court finds Defendant Michel, in her individual capacity, is entitled to absolute immunity in connection with her statements at the hearing.

Plaintiffs argue Defendants are not entitled to absolute immunity because they performed investigative functions.[119] "If a prosecutor engages in activities 'akin to those of an administrative or investigative officer, rather than to those of an advocate,' the

---

[115] Plaintiffs cite *Lewis v. Brautigam*, 227 F.2d 124, 129 (5th Cir. 1955), in support of the proposition that Defendants are not shielded by absolute immunity because they acted outside the scope of their jurisdiction. R. Doc. 8 at 17–18. In *Lewis*, the Fifth Circuit stated that "a quasi-judicial officer, such as a prosecuting attorney, who acts outside the scope of his jurisdiction and without authorization of law, cannot shelter himself from liability by the plea that he is acting under color of office." 227 F.2d at 129. In *Marrero v. City of Hialeah*, 625 F.2d 499, 504 n.4 (5th Cir. 1980), the Fifth Circuit rejected the *Lewis* approach, instead using the framework laid out by the Supreme Court in *Butz* and *Imbler v. Pachtman*, 424 U.S. 409 (1976).
[116] R. Doc. 1 at 11.
[117] R. Doc. 8 at 14–15.
[118] 474 U.S. 193, 200 (1985) (internal quotations omitted).
[119] R. Doc. 8 at 20–21.

prosecutor is no longer entitled to absolute immunity."[120] However, the Complaint contains no allegations regarding investigative functions performed by any of the individual Defendants. The Court finds the individual Defendants are entitled to absolute immunity with respect to all of the claims based on the factual allegations in the Complaint.

"[A] dismissal based on absolute immunity should generally be *with* prejudice."[121] The Court dismisses with prejudice Plaintiffs' § 1983 claims against Defendants Brasseaux, Michel, and Alexander, in their individual capacities.

### III. The Court dismisses without prejudice Plaintiffs' state law claims against the individual Defendants in their individual capacities.

Plaintiffs also bring several state law claims against the individual Defendants, in their individual capacities. Specifically, Plaintiffs bring claims against Defendants for abuse of process, defamation, malicious prosecution, and violation of the Louisiana Constitution.[122] Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims if it "has dismissed all claims over which it has original jurisdiction."[123] The Fifth Circuit has held that, after a district court dismisses a plaintiff's § 1983 claims, "[w]hether to refuse, or to retain, supplemental jurisdiction over a pendent state-law claim is committed to a district court's 'wide discretion.'"[124] In determining whether to exercise supplemental jurisdiction, the district court weighs traditional "common law factors of judicial economy, convenience, fairness,

---

[120] *Disraeli*, 489 F.3d at 635 (quoting *Geter v. Fortenberry,* 849 F.2d 1550, 1553 (5th Cir. 1988)).
[121] *Hunter v. Rodriguez*, 73 F. App'x 768, 770 (5th Cir. 2003) (citing *Boyd v. Biggers*, 31 F.3d 279, 285 (5th Cir. 1994)) (emphasis in original).
[122] R. Doc. 1.
[123] 28 U.S.C. § 1367(c).
[124] *Moon v. City of El Paso*, 906 F.3d 352, 360 (5th Cir. 2018) (quoting *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993)).

and comity."[125] In *Enochs v. Lampasas County*, the Fifth Circuit weighed these common law factors and found exercising supplemental jurisdiction was not appropriate for the following reasons:

> [the case] was still in its infancy (less than three months old), no discovery had occurred, no hearings or trial dates had been scheduled, the district court was not even moderately familiar with any of the Texas state law issues, no financial or other inconvenience would have occurred, and no prejudice would have arisen.[126]

In this case, Plaintiffs filed suit on April 5, 2019, approximately four months ago.[127] As of July 25, 2019, the parties had not completed initial disclosures.[128] Although a trial date has been set for June 8, 2020, no hearings have been conducted.[129] The Court's consideration of the instant motion did not require any analysis of the merits of Plaintiffs' state law claims. Accordingly, dismissing the state law claims would not be a waste of judicial resources. Further, there is no indication that the Court is intimately familiar with the state law claims at this stage of the litigation. As a result, the Court dismisses without prejudice Plaintiffs' state law claims against the individual Defendants in their individual capacities.[130]

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the motion to dismiss, filed by Defendants Louisiana State Board of Embalmers and Funeral Directors, Kim Michel, S.J. Brasseaux, and Dianne Alexander, pursuant to Rule 12(b)(1) of the Federal Rules of Civil

---

[125] *Id.* at 361 (quoting *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011)).
[126] 641 F.3d at 162.
[127] R. Doc. 1.
[128] R. Doc. 12 at 2.
[129] *Id.* at 12.
[130] *Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 334 n.6 (5th Cir. 2002) (stating "unadjudicated pend[ent] state law claims must be dismissed without prejudice to allow the plaintiff to refile in state court when a district court dismisses the federal claims serving as the basis for its jurisdiction and elects not to exercise supplemental jurisdiction over the state law claims.").

Procedure on sovereign immunity grounds and pursuant to Rule 12(b)(6) on absolute immunity grounds and alternatively on qualified immunity grounds, be and hereby is **GRANTED**.[131]

  **IT IS FURTHER ORDERED** that Plaintiffs' claims under 42 U.S.C. § 1983 and under state law against Defendant Louisiana State Board of Embalmers and Funeral Directors and against Defendants Kim Michel, S.J. Brasseaux, and Dianne Alexander, in their official capacities, be and hereby are **DISMISSED WITHOUT PREJUDICE** on sovereign immunity grounds.

  **IT IS FURTHER ORDERED** Plaintiffs' claims under 42 U.S.C. § 1983 against Defendants Kim Michel, S.J. Brasseaux, and Dianne Alexander, in their individual capacities, are **DISMISSED WITH PREJUDICE** on absolute immunity grounds.

  **IT IS FURTHER ORDERED** that Plaintiffs' state law claims against Defendants Kim Michel, S.J. Brasseaux, and Dianne Alexander, in their individual capacities, are **DISMISSED WITHOUT PREJUDICE**.

  **New Orleans, Louisiana, this 8th day of August, 2019.**

  _____
  **SUSIE MORGAN**
  **UNITED STATES DISTRICT JUDGE**

---

[131] R. Doc. 3-1.